**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION**

|  |  |
|---|---|
| BROUGHTON, INC.<br><br>                        Plaintiffs,<br><br>v.<br><br>CITY AND COUNTY OF BUTTE SILVER BOW,<br><br>                        Defendants. | **CV-25-65-BU-BMM**<br><br><br>**ORDER ON MOTION FOR SUMMARY JUDGMENT** |

**INTRODUCTION**

Defendant City and County of Butte Silver Bow ("BSB") moves for summary judgment against Broughton, Inc. ("Broughton"). (Doc. 14.) Broughton opposes the motion. (Doc. 18.) The Court held a hearing on February 2, 2026. (Doc. 24.)

**BACKGROUND**

Plaintiff Broughton, a Montana Corporation, owns the business of "Grommit LLC DBA Starrbuds." Glenn and Jill Broughton own Broughton. Broughton applied for a business license for Starrbuds, a proposed retail cannabis dispensary, located at 301 South Arizona Avenue, Butte, Montana. (Doc. 16 ¶ 1.)

BSB's Planning Department and Building Code & Enforcement Office initially reviews all applications to ensure compliance with building codes, zoning codes, and state law. (*Id*. ¶ 3.). Rusty Christensen, BSB Building Official, contacted

Jill Broughton in April of 2025 to do a walkthrough and inspection of the building. (*Id*. ¶ 7.) Christensen informed Jill Broughton on April 23, 2025, that the Building Department had approved Broughton's business application as the building complied with all applicable building codes. (*Id*. ¶ 8.) Christensen's email read as follows: "Hello, your business license for Grommit LLC DBA Starrbuds is approved and ready to issue. The Butte Silver Bow Building Department has inspected and approves of this location (301 S Arizona)." (Doc. 18 at 3.)

Butte School District Superintendent, Judy Jonart, and Butte High School Principal, John Metz, contacted BSB Chief Executive, J.P. Gallagher, in April of 2025 regarding concerns about Broughton's proposed location of its retail cannabis dispensary. (Doc. 16 ¶ 10.) Both the superintendent and principal expressed concerns about the close proximately of the new retail cannabis shop to Butte High School. (*Id*.) J.P Gallagher informed Planning Director, Julia Crain, about the concerns. (*Id*. ¶ 11.)

Crain analyzed Broughton's proposed retail cannabis locations proximately to the Butte High School entrances. (*Id*.) The entrances analyzed by Crain included an entrance to a Butte High School building that holds vocational classes, particularly the welding classroom. (*Id*. ¶ 13.) The welding classroom has an entrance into the Butte High School building located on Arizona Street. (*Id*.) The entrances to the welding classroom and Broughton's proposed retail cannabis dispensary were both

located on Arizona Street. (*Id*.) Crain found the entrance to the welding classroom of Butte High School to be approximately 475 feet from Broughton's proposed retail cannabis dispensary of Starrbuds. (*Id*.)

Crain, acting in her capacity as the zoning official for BSB's Planning Department, determined that Broughton's new proposed retail cannabis location was not permitted for a BSB business license due to its proximity to a school. (*Id*. ¶¶ 12-14.) BSB interpreted Mont. Code Ann. § 16-12-207(3)(a)(iii), to prohibit cannabis dispensaries located on the same street and within 500 feet of a school. (*Id*.) The entrance to Broughton's proposed cannabis dispensary fell within 500 feet of an entrance into Butte High School on Arizona Street (*Id*.) Crain informed Broughton's representative, Chad Shepard, on April 28, 2025, that BSB's Planning Department could not approve Broughton's business license at the proposed property. (*Id*. ¶ 15.) Crain also sent an email to Glenn Broughton on May 7, 2025, explaining BSB Planning Department's basis for the denial of the application and provided a zoning appeal form. (*Id*. ¶ 16.)

Broughton appealed. (*Id*. ¶ 17.) Crain, Gallagher, BSB County Attorney Matthew Enrooth, Glenn Broughton, and Chad Shepard met on May 27, 2025, to discuss Broughton's business license application and location concerns. (*Id*. ¶ 18.) The parties disagreed with the interpretation of Mont. Code Ann. § 16-12-207, and whether Broughton's proposed retail cannabis dispensary location complied with

Montana law. BSB received a letter from Broughton's counsel on May 28, 2025, requesting a business license or notice of refusal by June 9, 2025. Broughton's counsel stated in the letter that "[t]here appears to be a difference in opinion on how to interpret M.C.A. § 16-12-207." (Doc. 16 ¶ 19.) BSB's County Attorney, Enrooth, agreed with Crain's interpretation that the location of Broughton's proposed cannabis shop being on the same street as an entrance to Butte High School and within 500 feet of the school prohibited BSB from approving Broughton's business license.

Montana law relating to the location of a retail cannabis dispensary requires that the "[t]he [D]epartment [of Revenue] shall deny a marijuana license if the applicant's proposed licensed premises" are "within 500 feet of and on the same street as a building used exclusively as a . . . school." Mont. Code Ann. § 16-12-207(3)(a)(iii). "The distance must be measured in a straight line from the center of the nearest entrance of the . . . school to the nearest entrance of the licensee's premises." *Id*.

Enrooth contacted the Montana Department of Revenue Cannabis Control Division following the May 27, 2025, meeting to obtain additional information on the interpretation of Mont. Code Ann. § 16-12-207. (Doc. 16 ¶ 20.) Enrooth particularly sought clarification on the distance restriction from schools. (*Id*.) The Cannabis Control Division provided BSB clarification on the distance restriction for

cannabis dispensaries. BSB approved Broughton's business license on June 9, 2025. (Doc. 16 ¶ 21.) BSB's Treasurer's Office issued Broughton the business license the following day on June 10, 2025, after it was determined to be in compliance with all the BSB ordinance requirements. (*Id.* ¶ 22.)

Broughton filed a complaint against BSB on June 20, 2025. Broughton alleges the following claims against BSB: (1) violations of 42 U.S.C. § 1983, Fifth Amendment taking; (2) violations of 42 U.S.C. § 1983, Fourteenth Amendment; and (3) negligence. (Doc. 1.)

## LEGAL STANDARD

A court may grant summary judgment when the movant demonstrates that there exists "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute of material fact requires sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.* at 248.

## DISCUSSION

BSB argues that, as a matter of law, BSB did not violate Broughton's constitutional rights or breach a duty owed to Broughton. (Doc. 15 at 1.) The Court

will address in turn Broughton's Fifth Amendment takings claim, Fourteenth Amendment claims, and negligence claim.

## I.      Broughton's Fifth Amendment Regulatory Taking Claim

The Fifth Amendment "Takings Clause" prohibits the taking of "private property . . . for public use, without just compensation." U.S. Cont. Amend. V. Broughton must establish the following requirements to succeed on its takings claim: (1) Broughton possessed a constitutionally protected property interest in the business license; and (2) that the property interest has been taken under the color of state law, without just compensation. *Sierra Med. Servs. Alliance v. Kent,* 883 F.3d 1216, 1223 (9th Cir. 2018).

Broughton first must establish that it possessed a constitutionally protected property interest. *Turnacliff v. Westly*, 546 F.3d 1113, 1118 (9th Cir. 2008). "Only if [the plaintiff] does indeed possess such an interest will a reviewing court proceed to determine whether the expropriation of that interest constitutes a 'taking' within the meaning of the Fifth Amendment." *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1198 (9th Cir. 1998). For a property interest to arise, there must be a legitimate claim of entitlement, and "not merely an abstract need or desire for a particular benefit." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). "[A] benefit is not protected if government officials may grant or deny it at their discretion." *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005).

6

Brought's complaint asserts it obtained a protected property right to the business license on April 23, 2025, after having received an email from Christensen. Christensen's email read, "[h]ello, your business license for Grommit LLC DBA Starrbuds is approved and ready to issue. The Butte Silver Bow Building Department has inspected and approves of this location (301 S Arizona)." (Doc. 1 at 8.) Broughton argues BSB's subsequent withholding of the business license for 47 days constitutes a regulatory taking. (Doc. 1 at 8.) The Court disagrees.

"Generally, government licenses or permits do not give rise to a protected property interest." *Flathead Props., L.L.C. v. Flathead Cnty.*, 561 P.3d 930, 934 (Mont. 2024). Licenses usually involve a privilege. *Wallace v. Mont. Dept. of Fish, Wildlife & Parks*, 889 P.2d 817, 820 (Mont. 1995). An adult-use dispensary license is a "privilege that the state may grant to an applicant and is not a right which an applicant is entitled." Mont Code Ann. § 16-12-207.

Broughton's mere submission of an application for a BSB business license and receipt of approval from the BSB Building Department did not vest in Broughton a right to issuance of the business license on April 23, 2025. BSB Code of Ordinances 5.04.030(A) outlines the requirements that a business license applicant must meet before the BSB Treasurer may issue a business license. Each applicant must receive "the endorsement of the building inspector and the zoning officer" before the ordinance authorizes the BSB treasurer to issue a business

7

license. *Id*. BSB's treasurer may only issue a license "after being presented a properly completed application form" and license fee. The BSB treasurer may not issue a license that failed an inspection by a health officer, sanitary inspector, fire inspector, or building inspector. BSB Ordinance 5.04.030(B). BSB further possesses the authority to deny a business license that appears contrary to Montana state law and contrary to "the protection and general welfare" of community members. BSB Ordinance 5.04.020.

Broughton had not met the requirements of BSB Ordinance 5.04.030 for the issuance of the business license when it received Christensen's email on April 23, 2025. Broughton lacked a vested property interest in the business license at that time. Broughton had received endorsement from the building inspector, through receipt of Christensen's email. BSB's treasurer had no obligation to issue Broughton the business license based solely on Christensen's email received on April 23, 2025.

Broughton had not yet received its endorsement from BSB's zoning officer. Crain, BSB Planning Director and zoning officer, provided Broughton with an email on April 28, 2025, stating that the BSB Planning Department was denying its application for the business license. Crain's email did not constitute an endorsement by the zoning officer to allow BSB's treasurer to issue Broughton a business license. BSB further asserts that BSB's fire marshal had noted violations still needing correction by Broughton before licensing. (Doc. 16-2 ¶ 9; Doc. 19 at 6.) The BSB

treasurer cannot issue a business license if "an inspection by the health officer, sanitary inspector, fire inspector or building inspector indicates a violation of an ordinance existing at the place of business sought to be licensed." BSB Ordinance 5.04.030(B). Broughton does not dispute the fact that the BSB fire marshal had noted code violations on its proposed business location. Broughton's application for a business license and subsequent receipt of Christensen's email did not vest a property interest in the business license on April 23, 2025. Broughton had to meet additional requirements before BSB could issue a business license to Broughton.

The facts resemble *Germann v. Stephans*, 137 P.3d 545, 547 (Mont. 2006). In *Germann*, the City of Whitefish had enacted an emergency temporary zoning ordinance in 1999, and a permanent one in 2000, that required businesses to obtain a conditional use permit for bars and casinos to sell alcoholic beverages in certain zoning sections. *Id*. A Whitefish business owner applied to receive a conditional use permit to sell alcohol from her business. *Id*. The Department of Revenue had not yet approved the business owner's application for a liquor license at that time. *Id*. at 548. Whitefish denied the business owner's business application for a conditional use permit because Montana law prohibited the operation of the applicant's bar and casino based on the proximity to a school and the new local ordinance that precluded casinos in the zone where the business was located. *Id*. at 548-549. Public citizens

9

of Whitefish also voiced concerns about the location of the applicant's bar and casino due to its proximity to the school. *Id*.

*Germann* concluded that Whitefish's conduct of not approving the business owner's conditional permit application had not deprived the business owner of a vested property right to operate a bar or casino even when Whitefish had enacted an emergency ordinance while the business owner's application had been pending. *Id*. at 551. The business owner in *Germann* did not possess a protected property interest to establish her Fifth Amendment and Fourteenth Amendment claims. *Id*. at 550-51. *Germann* recognized that an agency's ability to exercise discretion whether to grant entitlement to a property interest defeats a claim of entitlement. *Id*. (citing *Kiely Const., LLC v. City of Red Lodge*, 57 P.3d 836 (Mont. 2002). *Germann* determined that the applicant had not shown that she was entitled to a property interest in operating a bar in that location because the Department of Revenue had discretion to deny the license. *Id*. at 551. "The mere fact that [the business applicant] applied for a liquor license at the time [Whitefish] had enacted the ordinances did not guarantee she would receive such an entitlement." *Id*.

Broughton similarly lacked a protected property interest in operating a retail cannabis dispensary at its proposed location when it applied for a BSB business license. The Department of Revenue still retained discretion in denying Broughton's cannabis license. This ability to exercise discretion defeats entitlement. *Kiely*, 57

10

P.3d at 844. The Department of Revenue could have interpreted Mont. Code Ann. § 16-12-207 in a manner that would have precluded Broughton from operating a retail cannabis business at its proposed location. BSB similarly retained discretion in issuing Broughton a business license when Christensen sent his building approval email on April 23, 2025.

Like *Germann*, Broughton had no vested property right to obtain a business license from BSB merely by having applied for a business license. BSB, in comparison to *Germann*, did not enact an emergency ordinance impacting Broughton's ability to receive a business license while Broughton's application was pending. Broughton instead had not met all of the requirements under BSB's existing ordinances to authorize the BSB treasurer to issue a business license. These facts indicate, even more strongly than *Germann*, that Broughton had no vested property interest in operating a retail cannabis dispensary. BSB and members of the public expressed reasonable concerns that the proximity of Broughton's cannabis business to Butte High School violated Mont. Code Ann. § 16-12-207. The undisputed facts show Broughton had not received the necessary endorsements, inspection approvals, and compliance with state law necessary to create a vested property interest for Broughton.

"[A] cognizable property interest exists 'only when the discretion of the issuing agency is so narrowly circumscribed that approval of a property application

11

is virtually assured.'" *Kiely*, 57 P.3d at 844 (citing *Gardner v. Baltimore Mayor & City Council*, 969 F.2d 63, 68 (4th Cir. 1992)). Approval of Broughton's business license was not virtually assured on April 23, 2025, as Broughton contends. BSB retained discretion to approve or deny Broughton's license due to concerns of its location, compliance with Montana law, and when considering the welfare and protection of BSB's community members. BSB Ordinance 5.04.020. Broughton has not sufficiently shown that it was entitled to receive a business license from BSB or had a vested property interest on April 23, 2025. Broughton's Fifth Amendment takings claim fails as a matter of law.

The Court further rejects Broughton's apparent authority argument that Christensen's email constituted approval that led Broughton to hold a subjective belief that it was entitled to a business license. (Doc. 18 at 5.) A party claiming apparent authority requires that (1) the party subjectively believed that the agent had authority to act, (2) the belief by the party was objectively reasonable, and (3) the party reasonably relied on the authority. *Myers v. Bennett Law Offices*, 238 F. 3d 1068, 1071 (9th Cir. 2001).

Broughton has failed to provide sufficient evidence to establish that a reasonable person would have believed that Christensen had authority to issue Broughton a BSB business license. Broughton offered no facts to show that Broughton's belief was objectively reasonable or that Broughton reasonably relied

12

on Christensen's authority to issue BSB business licenses. Broughton needed to take additional other steps before any business could be conducted at the location after receipt of Christensen's email. Broughton could not have reasonably relied solely on Christensen's email to start operating the business. Broughton could not have reasonably believed it was entitled to a business license or reasonably relied on Christensen's email given that other additional steps were necessary before a license could be issued. *See* BSB Ordinances 5.04.020 and 5.04.030.

The undisputed evidence suggests that Broughton could not reasonably have relied on Christensen's email to obtain a business license from BSB's treasurer. Broughton was not yet in compliance with all requirements required by BSB, such as making changes to comply with the BSB's fire marshal's noted violations. BSB Ordinances 5.040.30(B). Broughton had received notice of violations from the BSB fire marshal that needed to be addressed before approval. No evidence suggests Broughton had made these changes as of the date Christensen sent his email. Broughton has provided no facts that it had complied with all the necessary licensure requirements to make reliance on Christensen's email reasonable. Broughton's counsel's letter sent on May 28, 2025, further shows that Broughton did not reasonably rely on Christensen's email. (Doc. 16-1 at 12-15.) Broughton's counsel acknowledged that BSB refused to issue a business license to Broughton. (*Id*.)

13

Broughton's counsel's letter did not state that it believed that Christensen's April 23, 2025, email constituted as approval of Broughton's business license. (*Id.*)

The Court's conclusions could have been different if Broughton had been waiting only for building code approval when Christensen sent his email and had met all other requirements. The undisputed evidence suggests that Broughton could not reasonably have relied on Christensen's email. Broughton still needed to receive approval and licensure from the State of Montana and Department of Revenue for its cannabis operations that was necessary to begin operating its business in Butte. Broughton failed to show evidence that it reasonably relied on Christensen's alleged apparent authority.

## II.   Broughton's Fourteenth Amendment Claims

A party also must show that it possessed a vested property interest to establish a Fourteenth Amendment claim. The Court's determination that Broughton lacked a vested property interest in the business license precludes Broughton's federal constitutional claims against BSB. The Court notes, however, that even if Broughton possesses a vested property interest in the business license, Broughton's Fourteenth Amendment claims alleging violations of due process and equal protection fail as a matter of law. The Court will briefly address these claims.

### A. Substantive Due Process Claim

Broughton alleged that BSB violated Broughton's due process rights by "withdrawing an already approved business license." (Doc. 1 at 10.) BSB argues that it remained undisputed that Broughton did not receive its license until June 10, 2025, and that no license had been revoked by BSB. (Doc. 15 at 11.) BSB further asserts that, even assuming Broughton held a protected property interest in the business license, BSB's conduct was reasonable, adequate, and justified. (*Id.*) The Court agrees.

A party seeking to establish a substantive due process claim must demonstrate that the defendant's interference with property rights had been irrational or arbitrary. *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 15 (1976). Broughton argues that this case resembles *Bateson v. Geisse*, 857 F.2d 1300 (9th Cir. 1988). (Doc. 18 at 10.) In *Bateson*, the Ninth Circuit concluded that the plaintiff's due process rights had been violated after the city of Billings refused to issue a building permit to the plaintiff even though all business license requirements had been met and after the city attorney had recommended that a license be granted. *Bateson*, 857 F.2d at 1303. The Ninth Circuit determined that the city of Billings's denial of the business license had been arbitrary and capricious. *Id.* at 1304.

The facts here differ from *Bateson*. Broughton first did not meet all the business license requirements of BSB Ordinances 5.04.020 and 5.04.030, as explained above. The BSB treasurer could not simply issue Broughton's license as

15

claimed on April 23, 2025, as Broughton still had not met certain licensing requirements. Second, BSB's actions were not arbitrary and capricious. BSB's County Attorney had suggested he had concerns about issuing a license to Broughton given the language of Mont. Code Ann. § 16-12-207, and informed BSB officials to refrain from granting business licenses.

BSB had a reasonable basis to deny Broughton its business license. Broughton's own counsel acknowledged that it appears the parties had a reasonable dispute on the interpretation of Mont. Code Ann. § 16-12-207. (Doc. 16 ¶ 19.) The language of the Montana statute did not clearly indicate that BSB could have, or should have, issued a business license to Boughton given that Broughton's proposed cannabis location was located on the same street as an entrance into Butte High School and was within 500 feet of one another. The statute's language and BSB's reasonable interpretation would suggest that Montana state law prohibited a retail cannabis business at Broughton's proposed location.

BSB's did not act arbitrarily or capriciously when denying Broughton's business license application. BSB sought clarification on the statute from the Montana Department of Revenue Cannabis Control Division promptly after a meeting with the parties. BSB further kept Broughton informed throughout the process. Crain sent a denial letter to Broughton on April 28, 2025, and provided Broughton with the necessary zoning appeal documentation. BSB also met

16

personally with Broughton to discuss the issue and explain its position on the denial. The Court finds that BSB's actions do not rise to the level of arbitrary and capricious to satisfy a Fourteenth Amendment substantive due process claim, even if Broughton had possessed a vested property interest in operating a retail cannabis dispensary at its proposed location.

### B. Equal Protection

BSB also contends that Broughton's equal protection claim fails, as no allegations exist that BSB treated Broughton differently from other similarly situated marijuana dispensaries. (*Id*.) The Court agrees.

The Equal Protection Clause requires that those who are similarly situated by treated alike. *Campa v. Rosenquist*, 2023 U.S. Dist. LEXIS 152787, at *8-9 (D. Mont. Aug. 29, 2023). To state an equal protection claim, a plaintiff must allege that they intentionally were treated differently from others who are similarly situated without a rational basis for the difference in treatment or were discriminated against based upon a membership in a protected class. *Id.* No evidence exists that BSB discriminated against Broughton based on a protected class. This lack of evidence makes Broughton's equal protection claim a "'class of one' claim." *North Pacifica LLC v. City of Pacifica*, 526 F.3d 478, 486 (9th Cir. 2008) (citations omitted).

17

Broughton argues that it sufficiently has shown it was treated differently than three other similarly situated cannabis dispensaries in Butte that were granted licenses within three weeks from applying. (Doc. 18 at 13.) Broughton contends that it was in compliance with Montana state statutes and local ordinances like the other similarly situated cannabis dispensaries but was intentionally treated differently because BSB community members brought concerns. (*Id*. at 14). The Court disagrees.

Broughton has failed to set forth sufficient facts to support an inference that BSB intentionally treated Broughton differently from other similarly situated cannabis retail shops without a rational basis. Broughton has not shown that these other three cannabis shops were as close to a school as Broughton's proposed cannabis shop, or that BSB had to make a determination similar to Broughton's situation when granting the other cannabis dispensary business licenses. Broughton would not be similarly situated to other retail cannabis locations that were not located on the same street as a school or within 500 feet of that school. Broughton's equal protection claim sweeps too broadly in asserting that its class of one claim can proceed in comparison to all other retail cannabis applicants in Butte near the time it applied for a business license. Broughton also has shown no intentional conduct by BSB as to why it would have treated Broughton differently from others in a similar circumstance.

BSB further had a rational basis in initially declining to issue Broughton a business license due to the differing interpretations of Mont. Code Ann. § 16-2-207. BSB reasonably interpreted the plain language of Mont. Code Ann. § 16-12-207. BSB came to the reasonable conclusion that Montana law prohibited Broughton's proposed retail cannabis location on Arizona Street. The Court determines that BSB acted reasonably when dealing with Broughton's business license application. Broughton's allegations prove insufficient to state an equal protection claim and defeat summary judgment.

## III.    Broughton's Negligence Claim

BSB further argues that Broughton's negligence claim fails under the doctrine of quasi-judicial immunity. (Doc. 15 at 15 (citing *Koppen v. Bd. of Medical Examiners*, 759 P.2d 173, 175 (1988)). The Court agrees. Quasi-judicial immunity may shield municipalities from liability when performing functions and making decisions that involve the exercise of "judgment and discretion." Mont. Code Ann. § 2-15-102(10). Quasi-judicial functions include the "issuing, suspending, or revoking licenses, permits, and certificates." Mont. Code Ann. § 2-15-102(10)(c).

To issue a business license represents an action clearly included in the definition of "quasi-judicial function." Mont. Code Ann. § 2-15-102(10)(c); *See Mayer v. Madison Adoption Assocs.*, 2023 U.S. Dist. LEXIS 13013, at *9 (D. Mont.

2023). BSB retained discretion and the exercise of judgment on whether to issue the business license to Broughton. Such a discretionary decision falls squarely within the protections of quasi-judicial immunity. Broughton improperly contends that BSB lacked all discretion but to issue Broughton the business license on April 23, 2025, after receipt of Christensen's email. (Doc. 18 at 15-16.) The Court disagrees.

The undisputed facts establish that Broughton had not yet fulfilled all the mandatory requirements necessary for the BSB treasurer's office to issue Broughton a business license on April 23, 2025. BSB did not simply have the remaining non-discretionary and ministerial act of issuing the physical copy of the business license after Christensen's email on April 23, 2025. BSB possessed discretionary power to deny Broughton's business license due to community concerns of its location near Butte High School and concerns that issuing Broughton a business license would not comport with Montana law. The Court determines that quasi-judicial immunity shields BSB from Broughton's state law negligence claims. The Court grants BSB's motion for summary judgment on Broughton's negligence claims.

## CONCLUSION

Broughton failed to show that it possessed a vested property interest in operating a retail cannabis dispensary at 301 Arizona Street, Butte, Montana to sustain its federal constitutional claims. Broughton's Fifth Amendment takings claim, and Fourteenth Amendment substantive due process claim fail as a matter of

20

law. Brought also did not sufficiently establish that BSB intentionally treated Broughton's business license differently from other similarly situated cannabis dispensaries without a rational basis. Lastly, BSB remains shielded from liability on Broughton's negligence claim because the decision to issue a business license remained within the discretion of BSB and constitutes a quasi-judicial function.

## ORDER

Accordingly, **IT IS HEREBY ORDERED** that City and County of Butte Silver Bow's Motion for Summary Judgment (Doc. 14) is **GRANTED**.

Broughton's claims against BSB are **DISMISSED**. The Clerk is directed to enter judgment accordingly.

DATED this 12th day of March 2026.

_____
Brian Morris, Chief District Judge
United States District Court

21